UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL M. ROTH, | Case No.: 1:08 CV 1656 |
| Plaintiff | |
| v. | JUDGE SOLOMON OLIVER, JR. |
| BRIAN SLOAN, *et al.*, | |
| Defendants | <u>ORDER</u> |

Plaintiff Daniel M. Roth ("Plaintiff" or "Roth") brings the above-captioned suit against the following Defendants:  Brian Sloan ("Sloan"), a Strongsville police officer; Linda R. Travis ("Travis"), Paul Myles ("Myles"), and Teresa McKenna ("McKenna"), assistant county prosecutors for Cuyahoga County (collectively, "Prosecutor Defendants").  Now pending before the court is Plaintiff's Motion for Sanctions for Spoliation of Evidence by Defendants.  (ECF No. 44.)

### I.  FACTS AND PROCEDURAL HISTORY

The following facts are taken from Plaintiff's Amended Complaint (ECF No. 21).  In 2004, Plaintiff Roth allowed his thirty year-old son, Jeffrey Roth ("Jeffrey"), to live with him. (Am. Compl. at ¶ 5.) While living with Roth, Jeffrey began stealing from his father and using his credit card without permission. (*Id*.) Upon discovery, Roth instructed Jeffrey to move out of his home. (*Id*.) Roth, thereafter, notified his landlord as well as the police, in writing, of his son's conduct and that he was no longer living with him. (*Id*.)

After Jeffrey left Roth's home and moved in with his mother, Leslie Perlin ("Perlin"), in Atlanta, Georgia, he engaged in various acts of retaliation against his father. (Am. Compl. at ¶ 6.) He sent threatening emails to him, including one that stated that he would have him prosecuted for a bogus sex crime. (*Id*.) Roth forwarded these emails to the Pepper Pike Police Department. (*Id*.) Jeffrey also sent an intimidating email to a municipal court judge and signed the email "Respectfully Dan Roth." (*Id*.) Jeffrey later contacted the Mentor, Ohio police and alleged that Roth was abusing drugs. (Am. Compl. at ¶ 9.) The police began a full investigation, but Roth was cleared of any wrongdoing. (*Id*.)

In September 2005, Roth discovered that Jeffrey had stolen one of his credit cards and charged approximately $11,000 at Nordstrom, a department store. (Am. Compl. at ¶ 7.) Roth reported the charges to the Beachwood, Ohio police. Jeffrey was thereafter indicted for felony misuse of a credit card and grand theft in Cuyahoga County. (Am. Compl. at ¶¶ 7-8.) Roth was the victim and primary witness of these crimes. (Am. Compl. at ¶ 8.)

Ten days after Jeffrey was indicted on these charges, his fifteen year-old girlfriend, Colleen Gibson ("Gibson"), went to the Strongsville Police Department, alleging that Roth had attempted to sexually molest her at a local carnival five months earlier. (Am. Compl. at ¶ 11.) Two of Gibson's friends, who she had told about the purported attempt by Roth a few days prior, accompanied her to the police station. (*Id*.) At the station, Gibson met with Defendant Sloan and described what she alleged occurred with Roth. (*Id*.) Two months later, Sloan obtained Gibson's written statement. (Am. Compl. at ¶ 12.) Though it was not prepared at the police station and not witnessed by Sloan, he nevertheless signed it. (*Id*.) Sloan also obtained written statements about Roth from Jeffrey as well as his mother, Perlin. (Am. Compl. at ¶ 13.)

Sloan continued to investigate Gibson's allegations. The Pepper Pike Police Department contacted him regarding Jeffrey's conduct toward his father. (Am. Compl. at ¶ 14.) According to Roth, an officer from Pepper Pike informed Sloan that Jeffrey had sent a threatening email to a judge, which purported to be from Roth, and that he had stolen Roth's credit card and illegally charged over $10,000 at a department store, a crime for which he was currently being charged. (*Id*.) Sloan also received a call from Gibson's father, who stated that he was worried about her relationship with Jeffrey. (Am. Compl. at ¶ 15.) After Sloan contacted Roth regarding Gibson's allegations, Roth faxed him email communications between Jeffrey and Gibson, which Roth claims established that the allegations were a mere scam that Jeffrey used to retaliate against Roth and to intimidate him so that he would not testify against him in his criminal case for theft. Despite this evidence, Sloan prepared and filed a criminal complaint against Roth with the Cuyahoga County Court of Common Pleas, alleging two counts of attempted gross sexual imposition against Roth. (Am. Compl. at ¶ 17.)

On June 22, 2006, the Cuyahoga County Grand Jury indicted Roth on both counts. (Am. Compl. at ¶ 19.) At the arraignment, Prosecutor Myles sought a $250,000 bond, supervised release involving weekly reporting to a probation officer, and a psychiatric evaluation. (Am. Compl. at ¶ 20.) Roth contends that a psychiatric evaluation was sought based on false documents supplied by Perlin and Jeffrey. (*Id*.) The judge set a lower bond, but a weekly reporting and psychiatric evaluation was ordered. (*Id*.) At the trial, Roth contended that there was clear evidence that the crime for which he was charged was merely concocted by Gibson and Jeffrey. (Am. Compl. at ¶ 25.) Roth was ultimately found not guilty on both counts.

After Roth was acquitted, but prior to filing the instant case, Roth contacted the Strongsville Police Department and notified it of his intention to file suit against Sloan. (Am. Compl. at ¶ 42.) He also appeared at the police station in person to complain about Sloan's alleged misconduct in investigating Gibson's claims. (*Id*.) Thereafter, Roth contends that Sloan spoke to a Cleveland magazine and stated that although Roth was found not guilty of both offenses following a jury trial, it did not mean that he was innocent of these crimes. (Am. Compl. at ¶ 52.)

During the criminal trial of Roth, a tape recording of a controlled phone call between Gibson and Roth was played in its entirety. (Pl.'s Mot. for Sanctions, ECF No. 44, at p. 1.) Roth tried to get this recording from Defendants through the discovery process in this case. Roth was informed that the tape recording was missing sometime around December 2009, in response to a subpoena issued by Roth. (Def.'s Br. in Opp. to Pl, ECF No. 45, at p. 1.) Roth did receive the transcript of the recorded telephone call. Roth is *pro se* in this action.

## II. LEGAL STANDARD

Federal law on spoliation applies in federal court. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). As the Sixth Circuit has recognized "[s]poliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Manns*, 277 F. App'x 551, 558 (6th Cir.2008) (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir.2003)); *see also In Re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 144 (2nd Cir. 2008) (defining spoliation as "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation").

The duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id*. If this duty is breached, the burden is on the spoliating party to prove that the opposing party was not prejudiced by the alteration or destruction of evidence. *See Austral-Pacific Fertilizers v. Cooper Indus.*, 1997 U.S. App. LEXIS 5383 (6th Cir. 1997); *Easton Sports, Inc. v. Warrior Lacrosse, Inc.*, 2006 U.S.Dist. LEXIS 70214 (E.D. Mich., Sep. 28, 2006).

The Court in *Adkins*, 554 F.3d at 653, stated that, "a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." A party's level of culpability falls "along a continuum of fault -- ranging from innocence through the degrees of negligence to intentionality." *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988) (overruled on other grounds by *Adkins*, 554 F.3d 650); *Adkins*, 554 F.3d at 652-53. The appropriate sanctions for spoliation vary depending on the level of culpability ascribed to the party who destroyed the evidence. *Id.* Proper sanctions "should serve both fairness and punitive functions." *Id.* at 651. Furthermore, any sanctions imposed should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *In Re Terrorist Bombings*, 552 F.3d at 147.

### III.  LAW AND ANALYSIS

Roth requested that the court issue sanctions against Defendant Sloan. Roth did not request sanctions against any other Defendant. Roth did not ask for a specific sanction but instead stated that,

> Plaintiff will, however, refrain from making any recommendation as to a specific punitive sanction for the spoliation of the tape recording. The only recommendation Plaintiff will make is the recommendation contained herein to level the playing field as a result of the spoliated evidence for which Defendant is legally responsible. Plaintiff believes that any additional punitive sanction to be imposed should strictly remain within the province of the court and should take into consideration the entire discovery picture in this case and any other information which the court may have that bears upon the matter of the conduct of discovery.

(Pl.'s Mot. for Sanctions, ECF No. 44, at p. 14.)

Although sanctions for spoliation can range in severity, a common sanction in a spoliation case is the issuance of an adverse inference instruction. The Sixth Circuit, relying on the Second Circuit, explained that,

> [A] a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. United States Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002)) (citation omitted).

### A. Control and Obligation to Preserve

Defendant argues that he did not have a duty to preserve the tape because it was in the control of the State of Ohio and/or the Cuyahoga Common Pleas Court and not in the control of Sloan or any other police officers. According to Sloan, at his deposition on February 26, 2010, he testified that he does not recall whether he ever received the tape back after the criminal proceedings were concluded. Both parties agree that Officer Sloan contacted the Cuyahoga County Prosecutor's Office to try to locate the tape, but was unsuccessful. (Pl.'s Mot. for Sanctions, ECF No. 44,at p.

6; Def.'s Opp. to Mot. for Sanctions, ECF No. 45, at p. 2.) Roth argues that Sloan had the duty to preserve the tape because Sloan "brought it to court and played it on or about July 11, 2007." (Pl.'s Reply, ECF No. 46, at p. 6.) Roth confuses Sloan with the prosecuting attorney in the criminal case. An attorney collects potential evidence and exhibits for trial; a witness does not gather, retain, and bring to trial, his own evidence. Therefore, the court finds that Roth has not shown that Sloan had the ability to preserve the tape, as Roth has not shown that Sloan had custody or possession of the tape after the end of the criminal trial.

### B. Culpable State of Mind

If a party knew or should have known that the evidence would be relevant to future litigation, and the party destroyed the evidence, then it is fair to find that the party had a culpable state of mind. *Beaven*, 622 F.3d at 553; *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998). Furthermore, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'" *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d. Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 109 (2d. Cir. 2001)). If it were proven that Sloan had custody over the tape after the criminal proceeding, then Roth could meet this prong of the analysis, for Sloan had knowledge of the pending litigation. Roth expressed his intention to sue Sloan at the close of the criminal case against Roth. (Pl.'s Mot. for Sanctions, ECF No. 44, at pp. 3-4; *see also* Am. Compl. at ¶ 42.) However, as stated above, Roth has not shown that Sloan had custody over the tape after the criminal trial and therefore has not shown that he had the duty to preserve that tape.

### C. Relevance

Defendant argues that the tape is not relevant to any claims pending in this action. Defendant maintains that the tape would only arguably be relevant for Plaintiff's malicious prosecution claim, which the court dismissed in its September 30, 2009 Order (ECF No. 32). The remaining claims are: (1) witness intimidation; (2) First Amendment retaliation claim under Section 1983; and (3) defamation or false-light invasion of privacy. Roth maintains that the recorded conversation is relevant to his witness intimidation claim because it shows that Sloan acted recklessly. (Pl.'s Reply, ECF No. 46, at p. 2.)

Whether Sloan acted recklessly is relevant to the intimidation claim in that in order to overcome statutory immunity, Roth must show that, "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner." O.R.C. § 2744.03(A)(6). Therefore, the court finds that the tape is arguably relevant to the remaining claim for intimidation.

However, the court finds that Roth cannot meet all three prongs of the spoliation analysis. The court finds that Plaintiff has not shown that Sloan had custody over the tape or that Sloan had a culpable state of mind. Therefore, Plaintiff has not shown that spoliation occurred.

### D. Prejudice

In any event, the court finds that because Roth has a transcript of the telephone call, he is not prejudiced by not having the tape. Roth argues that the transcript is inadequate and that he is prejudiced by not having the audio tape. Roth argues:

> The general concept is that hearing and observing a witness while they are testifying is far more significant and valuable in determining the credibility of the witness and the weight to be assigned to the testimony as compared to merely reviewing a written transcript. In the instant case, the actual tape recording would provide the jury with the actual voices, and all the nuances and meaning that goes with that, of

-8-

> the participants in the controlled call. It should be noted that it was the tape recording that was played to the trial jury in the underlying criminal case and that the jury was not merely provided a transcript of the phone conversation. The jury never saw the transcript. . . . Plaintiff actually saw the impact of the tape recording on the trial jurors who listened to it. Their facial expressions told the tale. It was obvious to the jurors that Gibson.s claim was a hoax. As an aside, we do not even know how reliable the transcript is. It does not appear to have been prepared by a court reporter or someone trained in creating transcripts. The missing tape recording presents the actual phone conversation.

(Pl.'s Mot. for Sanctions, ECF No. 44, at pp. 8-9.) Roth does not cite any law in support of his argument.[1]

Roth also claims that the transcript does not accurately reflect the telephone conversation. Though he makes this claim, he does not provide any explanation as to why he thinks this is true. Based on the information currently available to the court, the court finds that the transcript sufficiently makes available the information Roth seeks and that he is not prejudiced by not having an audio version of the conversation. Because Roth has a reasonable substitute for the tape, in the form of the transcript, a spoliation sanction is not appropriate.

### E. Evidentiary Hearing

Plaintiff requests that the court conduct an evidentiary hearing on the issue of spoliation. (ECF No. 44, at p. 14.) The court finds that it can determine all of the legal and factual issues from the written submissions and therefore does not need to hold an evidentiary hearing.

### IV. CONCLUSION

---

[1] In fact, the only cases that Roth cites in his fifteen-page motion is *Adkins v. Wolever,* 554 F.3d 650 (6th Cir. 2009) and *Adkins v. Wolever,* 520 F.3d 587 (6th Cir. 2008). Roth does not cite any case law in his Reply Brief.

The court hereby denies Plaintiff's Motion for Sanctions for Spoliation of Evidence by Defendants. (ECF No. 44.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2011