UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL M. ROTH, | ) | Case No.: 1:08 CV 1656 |
| Plaintiff | ) ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| BRIAN SLOAN, *et al.*, | ) ) | |
| Defendants | ) ) | ORDER |

Plaintiff Daniel M. Roth ("Plaintiff" or "Roth") brings the above-captioned suit against the following Defendants: Brian Sloan ("Sloan"), a Strongsville police officer; Linda R. Travis ("Travis"), Paul Myles ("Myles"), and Teresa McKenna ("McKenna"), assistant county prosecutors for Cuyahoga County (collectively, "Prosecutor Defendants"). The only claims remaining following the court's partial granting of the Defendants' Motions for Judgment on the Pleadings are solely against Defendant Sloan. Now pending before the court are the following Motions: (1) Defendant Sloan's Motion for Summary Judgment (ECF No. 48); and (2) Plaintiff's Motion for Leave to File Response to Defendant's Reply to Brief in Opposition to Defendant's Motion for Summary Judgment (ECF No. 56). For the following reasons, the court grants Defendant Sloan's Motion for Summary Judgment, and grants Plaintiff's Motion for Leave to File Response.

## I. FACTS AND PROCEDURAL HISTORY

In 2004, Plaintiff Roth allowed his thirty year-old son, Jeffrey Roth ("Jeffrey"), to live with him. (Am. Compl. at ¶ 5.) At the time, Jeffrey had no employment or independent source of income and was battling a serious drug problem. (*Id.*) While living with Roth, Jeffrey began stealing from his father and using his credit card without permission. (*Id.*) Upon discovery, Roth instructed Jeffrey to move out of his home. (*Id.*) Roth, thereafter, notified his landlord, as well as the Willoughby Police Department, in writing, of his son's conduct and that he was no longer living with him. (*Id.*)

After Jeffrey left Roth's home and moved in with his mother, Leslie Perlin ("Perlin"), in Atlanta, Georgia, he engaged in various acts of retaliation against his father. (Am. Compl. at ¶ 6.) He sent threatening emails to him, including one that stated that he would have him prosecuted for a bogus sex crime. (*Id.*) Roth forwarded these emails to the Pepper Pike Police Department. (*Id.*) Jeffrey also sent an intimidating email to a municipal court judge and signed the email "Respectfully Dan Roth." (*Id.*) Jeffrey later contacted the Mentor, Ohio police and alleged that Roth was abusing drugs. (Am. Compl. at ¶ 9.) The Mentor police began a full investigation, but Roth was cleared of any wrongdoing. (*Id.*)

In September of 2005, Roth discovered that Jeffrey had stolen one of his credit cards and charged approximately $11,000 at Nordstrom, a department store. (Am. Compl. at ¶ 7.) Roth reported the charges to the Beachwood, Ohio police. Jeffrey was thereafter indicted for felony misuse of a credit card and grand theft in Cuyahoga County. (Am. Compl. at ¶¶ 7-8.) Roth was the victim and primary witness in regard to these crimes. (Am. Compl. at ¶ 8.)

Ten days after Jeffrey was indicted on these charges, his fifteen year-old girlfriend, Colleen Gibson ("Gibson"), went to the Strongsville Police Department, alleging that Roth had attempted to sexually molest her at a local carnival five months earlier. (Am. Compl. at ¶ 11.) A few days prior to Gibson's visit to the Strongsville Police Department, Gibson told two of her friends, who accompanied her there, of the alleged attack by Roth. (*Id.*) At the station, Gibson met with Defendant Sloan and described what she alleges occurred with Roth. (*Id*.)

Sloan proceeded to investigate Gibson's allegations. According to Roth, an officer from Pepper Pike informed Sloan that Jeffrey had sent a threatening email to a judge, which purported to be from Roth, and that he had stolen Roth's credit card and illegally charged over $10,000 at a department store, a crime for which he was currently being charged. (Am. Compl. at ¶ 14.) After Sloan contacted Roth regarding Gibson's allegations, Roth faxed him email communications between Jeffrey and Gibson, which Roth claims established that the allegations were a mere scam that Jeffrey used to retaliate against Roth and to intimidate him so that he would not testify against him in his criminal case for theft.

Despite this evidence, Sloan sent his file regarding Gibson's allegations to the Cuyahoga County Prosecutor's Office. (Sloan Aff. at ¶ 7, ECF No. 48-1.) On June 22, 2006, the Cuyahoga County Grand Jury indicted Roth on two counts of gross sexual imposition. (Am. Compl. at ¶¶ 17, 19.) At the trial, Roth contends that there was clear evidence that the crime for which he was charged was merely concocted by Gibson and Jeffrey. (Am. Compl. at ¶ 25.) Roth was ultimately found not guilty on both counts.

Throughout the investigation of the case and through Roth's trial, Roth contends that Jeffrey was a known fugitive in Cuyahoga County. (Am. Compl. at ¶ 13.) A warrant was issued for his

arrest in December 2005 after he was indicted for credit card theft; however, he was not apprehended until January 2007. (*Id.*) One month later, he pled guilty to one count of misuse of a credit card and was set for sentencing in March 2007. He never appeared for his presentence report meeting, and according to Roth, he currently remains a fugitive. Jeffrey was listed as a witness for the prosecution in Roth's case, but he was never called to testify. (Am. Compl. at ¶ 27.)

After Roth was acquitted, but prior to filing the instant case, Roth contacted the Strongsville Police Department and notified them of his intention to file suit against Sloan. (Am. Compl. at ¶ 42.) He also appeared at the police station in person to complain about Sloan's alleged misconduct in investigating Gibson's claims. (*Id*.) Thereafter, Roth contends that Sloan spoke to a Cleveland magazine and stated that although Roth was found not guilty of both offenses following a jury trial, it did not mean that he was innocent of these crimes. (Am. Compl. at ¶ 52.)

On July 9, 2008, Roth filed the instant action against Gibson, Gibson's mother, Jeffrey, Perlin, the County of Cuyahoga, Ohio, the City of Strongsville, Ohio, as well as Defendant Sloan and Prosecutor Defendants. The court held a Case Management Conference on October 29, 2008, in which Plaintiff agreed to amend his Complaint to eliminate Gibson, Gibson's mother, Jeffrey, Perlin, the County of Cuyahoga, and the City of Strongsville. (Case Management Order, ECF No. 20.) Plaintiff, in his Amended Complaint, asserted the following claims against the remaining Defendants: (1) intimidation pursuant to Ohio Revised Code § 2921.03 against all Defendants; (2) violation of constitutional rights under 42 U.S.C. §§ 1983 and 1985 against all Defendants; (3) malicious prosecution against all Defendants; and (4) defamation and false light invasion of privacy

against Defendant Sloan.[1]  On September 30, 2009, the court granted in part and denied in part Defendants' Motions for Judgment on the Pleadings.  The court granted the Motion of Prosecutor Defendants' Motion for Judgment on the Pleadings in its entirety.  The court partially granted and partially denied Defendant Sloan's Motion for Judgment on the Pleadings.  The only remaining claims against him are for witness intimidation, First Amendment retaliation claim under § 1983, and defamation or false light invasion of privacy.  On April 30, 2010, Defendant Sloan filed a Motion for Summary Judgment on the remaining claims.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n*, *Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the

---

[1] Roth did not state whether he was suing Defendants in their official capacity or individual capacities.  However, an official capacity claim is equivalent to a claim against the governmental entity employing the official.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  It is well-settled that when a plaintiff brings suit against a governmental employee in his or her official capacity, plaintiff must demonstrate that the enforcement of an entity's policy or custom caused the violation of the plaintiff's rights.  *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Because there is no such allegation in the Amended Complaint, the court construes Roth's claims as claims against Defendants in their individual capacities.

outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### III. LAW AND ANALYSIS

### A. Count 1: Intimidation

Roth asserts a state law claim for witness intimidation against Defendant Sloan for initiating the criminal case against him. Under Ohio Revised Code § 2921.03(A), a claim for intimidation of a witness lies where a person: (1) knowingly, (2) by force or unlawful threat of harm to any person or property, or (3) by filing, recording, or using a false or fraudulent writing with malicious purpose in bad faith or in a wanton or reckless manner, (4) attempts to influence, intimidate, or hinder a witness in the discharge of that duty. *See also State v. Suber*, 798 N.E.2d 684, 691 (Ohio Ct. App. 2003). Defendant Sloan argues that Plaintiff's claim for intimidation fails because he did not set forth facts and evidence in support of the second, third, or fourth elements of this claim. Plaintiff concedes that there is no claim being made in regard to the second element. (Br. Opp. at 13, ECF No. 53.) Based on the plain language of the statute, Plaintiff need only prove either the second or third elements, and not both, to prevail on this claim. Plaintiff maintains that he has put forth evidence which would show Sloan filed a "false or fraudulent writing" in a reckless manner, in support of the third element. Defendant disagrees with Plaintiff's contention. However, the court need not analyze the information put forth by the parties regarding the third element, as Plaintiff has failed to put forth any evidence in support of the fourth element. In order to survive summary judgment, Plaintiff must demonstrate that an issue of material fact remains regarding the intimidation claim. Plaintiff contends that the Case Information Form ("CIF"), which contains a summary of Gibson's statement, is the "materially false or fraudulent writing," which Sloan prepared to go along with the investigative file that he sent to the Cuyahoga County Prosecutor's Office. While Plaintiff maintains that the CIF was used in order to influence, hinder, or intimidate

Plaintiff from testifying against his son, Jeffrey, in the case against him for credit card theft, Plaintiff has not put forth any evidence to demonstrate this claim. Therefore, as Plaintiff has put forth no evidence that would demonstrate that he was hindered as a witness in regard to the case against his son, the court hereby grants summary judgment on said claim.

### B. First Amendment Retaliation Claim under Section 1983

In Count II of the Amended Complaint, Roth asserts that Defendant Sloan violated his First Amendment rights by making false statements to the media in an attempt to retaliate against Roth for filing the instant suit. (Am. Compl. at ¶ 42.) Sloan provided a statement to *Scene Magazine*, which appeared in the article as the following: "He was found not guilty," says Sloan. "But that doesn't mean he's innocent." (*Scene Magazine* at 22, ECF No. 53-1.) Plaintiff contends that Sloan's comments were "intended to paint Plaintiff as a sex offender after the jury found the Plaintiff 'not guilty' and the trial judge asked Plaintiff if he planned to sue anyone after the 'not guilty' verdict was returned." (Roth Aff. at ¶ 21, ECF No. 53-1.) In addition, Plaintiff maintains that "Defendant Sloan misused the credibility that he had as a police officer to paint that false picture of Plaintiff." (*Id*.) However, Sloan contends that after being contacted by a reporter from *Scene Magazine* following the criminal trial, he simply explained "that the 'not guilty' finding by the jury did not mean that Roth was found 'innocent,' rather, 'not guilty' meant that the jury did not find beyond a reasonable doubt that Roth was guilty." (Sloan Aff. at ¶ 10, ECF No. 48-1.) Sloan contends this was a true statement. (*Id*.)

Plaintiff seeks relief under 42 U.S.C. § 1983. The three elements of a First Amendment retaliation claim are:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to

> suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir. 2001).

In regard to the first element, it is well-settled that the First Amendment protects an individual's right to have access to the court. *See, e.g., Gilliard v. Norris*, 857 F.2d 1095, 1101 (6th Cir. 1988) ("The right to petition the government for redress of grievance is grounded in the first amendment, and generally includes the right of every citizen to access the courts.") (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)). Therefore, Plaintiff was engaged in a constitutionally protected activity.

As to the second element, Defendant argues that this claim fails as a matter of law because his statement to *Scene Magazine* does not constitute sufficient "adverse action" to support a First Amendment retaliation claim. (Def. Sloan's Mot. Summ. J. at 6.) The Sixth Circuit has adopted the standard used by the Seventh Circuit to define "adverse action" in the context of retaliation claims. *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999) (internal citations omitted.) An adverse action "is one that would 'deter a person of ordinary firmness' from exercise of the right at stake." *Id*. Though the term "adverse action" originated in the employment context, the Sixth Circuit has held that "any action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (internal citations omitted). The *Fritz* court further stated that "[t]he analysis of this factor must be tailored to the circumstances such that prisoners might have to endure more than public employees, who in turn might have to endure more than the average citizen." *Id*. Like Fritz, "Plaintiff is not a public

-9-

employee, official, or prisoner, and so the level of injury [he] must allege would be the lower limit of a cognizable injury for a First Amendment retaliation claim." *Id.* Therefore, the issue here is whether Sloan's actions "would be sufficient to deter an average citizen" from bringing suit against him. *Id.* The *Fritz* court noted that "[t]here are very few cases in this Circuit addressing First Amendment retaliation against private individuals." *Fritz*, 592 F.3d at 724. Therefore, the court will also rely on case with plaintiffs in other contexts besides retaliation against private individuals.

The Sixth Circuit has found plaintiffs' claims to be insufficient to constitute an adverse action, where plaintiffs were unable to identify specific and concrete injuries as a result of defendants' conduct. The Sixth Circuit "has held that the harassment necessary to rise to a level sufficient to deter an individual is 'not extreme.'" *Perkins v. Township of Clayton*, No. 09-2425, 2011 WL 13912, at *4 (6th Cir. Jan 4, 2011). Although the standard is low, the "plaintiff must still establish some relatively strong action." *Id.* In *Mattox*, 183 F.3d 515, one of the plaintiffs, a former firefighter, had cited the disclosure of personal childhood information by a fellow employee, in a report made available to the press and the public, in support of her First Amendment retaliation claim. The court stated that retaliation cases in the public employment context usually involved descriptive words such as "firing, dismissal, transfer, discharge, and suspension," but the plaintiff had failed to allege anything similar. *Id.* at 521. The court found that, despite the embarrassment she may have suffered, the plaintiff had failed to allege a specific and concrete personal injury as a result of the revelations. *Id.* at 523. She had only "offer[ed] generalized statements about the effect on her character and her reputation, about being held up to 'ridicule, contempt, shame, and disgrace.'" *Id.* In *Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005), the court found that the plaintiff, whose professional competence was publicly criticized by the prosecuting attorney

-10-

following the trial, had similarly failed to allege a specific and concrete personal injury. Mezibov had only alleged "a generalized harm to his character and reputation," no specific harm. *Id*.

Roth similarly alleges generalized injuries as a result of Defendant's conduct. In his affidavit, Roth contends that Defendant's statement to *Scene Magazine* has "damaged Plaintiff's reputation, [has] subjected Plaintiff to shame and disgrace and [has] adversely impacted Plaintiff's business." (Aff. ¶ 21, ECF No. 53-1.) Plaintiff also maintains that these "allegations have caused Plaintiff many sleepless nights and great mental anguish, torment and pain on many occasions." (*Id*.) Though the entire case and process has likely been hard on Plaintiff, he has only alleged general injuries, and fails to allege any specific injuries he has suffered as a result of Defendant's conduct. As the Sixth Circuit has consistently stated, allegations of specific injuries are required, and the failure to do so results in an insufficient claim of First Amendment retaliation.

Plaintiff contends that Defendant's conduct and Roth's subsequent injuries are sufficient to constitute an adverse action because the Sixth Circuit has stated that an adverse action "may include harassment or publicizing facts damaging to a person's reputation." *Fritz*, 592 F.2d at 724. In *Fritz*, the court found that the plaintiff had sufficiently stated a claim for an adverse action. The plaintiff had alleged that she engaged in a protected activity when she participated in "public meetings for [the township] and [when] she made comments in the press via letters to the editor." *Fritz*, 592 F.3d at 723. In retaliation, plaintiff asserted that the defendant, the Township Supervisor, contacted her employer, Farm Bureau Insurance Company ("Farm Bureau"), about his dislike of plaintiff's speech, and told Farm Bureau that its "presence in the community would be jeopardized," if plaintiff did not refrain from making comments in the future. *Id*. Plaintiff's contract with Farm Bureau was ultimately terminated. *Id*. at 721. The plaintiff further alleged that "she was denied zoning and

-11-

signage variances in retaliation for her protected conduct." *Id*. at 723. The court found that a person of ordinary firmness would likely be deterred from engaging in protected conduct if an elected official contacted the person's employer in an attempt to get him or her fired. *Id*. at 726. The court also found that the termination of plaintiff's contract with Farm Bureau in conjunction with the denial of the zoning and signage variances, were threats to plaintiff's economic likelihood, and sufficient to state a claim of retaliation. *Id*. at 728. The court noted that the circuit "has previously held that 'we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of the First Amendment rights was actually deterred.'" *Id*. (internal citations omitted). The court found in *Fritz* that the plaintiff had asserted real injuries, as "a credible threat to the nature and existence of one's ongoing employment is of a similar character to the other recognized forms of adverse action." *Id*. On the other hand, Roth's injuries are of similar character to those forms of adverse action that the Sixth Circuit has declined to recognize in the cases cited above.

The Sixth Circuit's holding in *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), further demonstrates that Roth's alleged injuries from Sloan's conduct are insufficient to support a claim for First Amendment retaliation. In *Bloch*, the sheriff had publicly revealed confidential and personal details of the victim's rape in response to her criticisms of the sheriff. The *Bloch* court found that an allegation of injury based on embarrassment, humiliation, and emotional distress was sufficient to be actionable, as it would be sufficient to "chill people of ordinary firmness from continuing to engage in their constitutionally protected activity." *Id*. at 682.

Though Sloan is a public official, his statement to *Scene Magazine* was not publicizing embarrassing or confidential facts about Roth. Sloan offered a truthful statement on the meaning of the not guilty verdict by the jury. Though the characterization of the injuries alleged are the same

as in *Bloch*, the conduct forming the basis for the adverse actions are not. Sloan's statement would not lead a reasonable factfinder to conclude that a person of ordinary firmness would be chilled from asserting his or her First Amendment rights as a result of his conduct. Thus, Plaintiff's claim is not supported by *Bloch*, and is insufficient to constitute an adverse action. To find that Sloan's statement is the type of conduct sufficient to constitute an adverse action in support of a First Amendment retaliation claim would "trivialize the First Amendment," something the Sixth Circuit has cautioned against. Injuries of the type Roth has alleged do not support a First Amendment retaliation claim.

Therefore, as Plaintiff has failed to allege specific and concrete injuries to meet the "adverse action" element of a First Amendment retaliation claim, summary judgment is hereby granted on this claim since no genuine issue of material fact remains.

### C. Count IV: Defamation and False Light Invasion of Privacy

Roth also asserts a claim for defamation and false light invasion of privacy against Defendant Sloan. Roth contends that Sloan's statement to *Scene Magazine* was defamatory and placed Roth in a false light.

Ohio defines defamation as "a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt ridicule, shame or disgrace, or affecting him adversely in his trade or business." *Wilson v. Sears Roebuck & Co.*, No. 08-COA-017, 2009 WL 27341, at *5 (Ohio Ct. App. Jan. 6, 2009) (citing *Matalka v. Lagemann*, 486 N.E.2d 1220 (Ohio Ct. App. 1985)). The elements for defamation under Ohio law are as follows: "1) false statement concerning another; 2) that is defamatory; 3) publication to a third party; 4) causing injury to the plaintiff; and 5) with a requisite degree of fault on the defendant's part." *Draudt v. Wooster City Sch. Dist.*, 246 F. Supp. 2d 820, 830 (N.D. Ohio 2003) (citing *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999)).

-13-

In cases where the plaintiff alleging defamation is a private person as opposed to a public figure, the plaintiff must demonstrate that the defendant made the false statement negligently. *See Fuchs v. Scripps Howard Broad. Co.*, 868 N.E.2d 1024, 1034 (Ohio Ct. App. 2006).

The Ohio Supreme Court only recently recognized a claim for false light invasion of privacy. *See Welling v. Weinfield*, 866 N.E.2d 1051, 1059 (Ohio 2007) (adopting the Restatement of Law 2d, Torts Section 652E definition of the claim). The court in *Welling* determined that a claim for false light invasion of privacy arises "if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id*. In order to succeed on this claim, the statement made by the defendant must be untrue. *Nicolazzo v. Yoingco*, 898 N.E.2d 94, 102 (Ohio Misc. 2007) (citing *Welling*, 866 N.E.2d at 1057). Since this claim is similar to defamation, a plaintiff may pursue both claims in the alternative; however, a plaintiff may not recover under both claims for a single statement. *Welling*, 866 N.E.2d at 1058.

Defendant Sloan argues that he is entitled to summary judgment on both Plaintiff's defamation and false light invasion of privacy claims because the statement he purportedly made was truthful, and truth is a complete defense to defamation and false light invasion of privacy. Defendant is correct that both defamation and false-light claims require a statement to be false. However, the issue is whether Sloan's statement was truthful. The Supreme Court has stated that an "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *U.S. v. Watts*, 519 U.S. 148, 155 (1997) (quoting *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361 (1984)). The *Watts* court further stated:

> [a]s then-Chief Judge Wallace pointed out in his dissent in *Putra*, it is impossible to know exactly why a jury found a defendant not guilty on a certain charge.  '[A]n acquittal is not a finding of any fact.  An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt.  Without specific jury findings, no one can logically or realistically draw any factual finding inferences. . . ."

*Id*. (internal citation omitted).  The Ohio Supreme Court has reiterated this contention, stating that an acquittal "is not necessarily a finding that an accused is innocent."  *Walden v. State*, 547 N.E.2d 962, 966 (Ohio 1989).  Therefore, Sloan's statement that a not guilty verdict does not mean Roth is innocent is truthful.

Plaintiff contends that Defendant is still liable for defamation or false light invasion of privacy because this statement insinuates he was guilty of the gross sexual imposition charges. (Br. Opp. at 31.)  However, "truth is a complete defense even if the words could be construed as defamatory." *Burkowski v. Hall*, 165 F. Supp. 2d 674, 679 (quoting *Kilroy v. Lebanon Correctional Inst.*, 575 N.E.2d 903, 906 (Ohio Misc. 1991).  In order for a statement to be true under Ohio law, a party need only show that the statement is "substantially true."  *Id*.  Here, the statement is completely true.  Even if the statement could be construed as defamatory, the truth defense still prevents it from being actionable. Therefore, no genuine issue of material fact remains, and the court grants Defendant summary judgment on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants Defendant Sloan's Motion for Summary Judgment (ECF No. 48) and Plaintiff's Motion for Leave to File Response to Defendant's Reply (ECF No. 56).

IT IS SO ORDERED.

                                      /s/ *SOLOMON OLIVER, JR.*
                                      CHIEF JUDGE
                                      UNITED STATES DISTRICT COURT

April 29, 2011